John Mansfield
Mansfield Law
121 SW Morrison, Suite 400
Portland, OR  97204
(971) 271-8615
john@mansfieldlaw.net

Jonathan T. Suder (pro hac vice to be filed)
Brett M. Pinkus (pro hac vice to be filed)
Glenn S. Orman (pro hac vice to be filed)
FRIEDMAN, SUDER & COOKE
604 E. Fourth Street, Suite 200
Fort Worth, TX  76102
(817) 334-0400
(817) 334-0401 fax
jts@fsclaw.com
pinkus@fsclaw.com
orman@fsclaw.com

ATTORNEYS FOR PLAINTIFF
ADASA INC.

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# EUGENE DIVISION

| | |
|---|---|
| **ADASA INC.**, an Oregon corporation<br><br>Plaintiff,<br><br>v.<br><br>**IMPINJ, INC.**, a Delaware corporation,<br><br>Defendant | Case No.: 6:16-cv-957<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff ADASA INC. ("Plaintiff" or "ADASA") files this Original Complaint against Defendant IMPINJ, INC., alleging as follows:

## I. THE PARTIES

1. ADASA INC. is a corporation organized and existing under the laws of the State of Oregon, with a principal place of business in Eugene, Oregon.

2. Upon information and belief, Defendant IMPINJ, INC. ("IMPINJ" or "Defendant") is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business in Seattle, WA. IMPINJ may be served with process through its registered agent, John Hyde, 37845 Soap Creek Road, Corvallis, OR 97330.

## II. JURISDICTION AND VENUE

3. ADASA's claims for patent infringement against IMPINJ arise under the patent laws of the United States, including 35 U.S.C. §§ 271(a) and (b). Consequently, this Court has exclusive jurisdiction of such action under Title 28 U.S.C. § 1331 and 1338.

4. IMPINJ is subject to both the specific and general personal jurisdiction of this Court because, among other things, it has established continuous and systematic contacts in this judicial district, including by conducting business throughout the State of Oregon; it has committed acts of patent infringement within this judicial district giving rise to this action; and it has minimum contacts with the forum such that the exercise of jurisdiction over it would not offend traditional notions of fair play and substantial justice. For all of these reasons, personal jurisdiction exists and venue is proper in this Court under 28 U.S.C. §§ 1391(b)(1), (2) and (c)(2) and 28 U.S.C. § 1400(b).


**121 SW Morrison, Ste. 400**
**Portland OR 97204**

## PATENT-IN-SUIT

5. On March 1, 2016, U.S. Patent No. 9,272,805 B2 ("the '805 Patent") was duly and legally issued for "SYSTEMS, METHODS, AND DEVICES FOR COMMISSIONING WIRELESS SENSORS." A true and correct copy of the '805 patent is attached hereto as Exhibit A.

6. The '805 Patent, very generally speaking, relates to encoded wireless radio frequency identification ("RFID") devices. More specifically, the '805 Patent claims an RFID transponder or integrated circuit with a specific memory structure that utilizes the "most significant bits" of a block of the memory in order to create a unique serial number for an associated individual item.

## BACKGROUND

7. Clarke McAllister, the President and Founder of Plaintiff, has worked with and in the RFID industry since the early 1990s, including founding his own RFID company, ADASA Incorporated, in 2004.

8. At the time McAllister founded ADASA, the RFID industry was challenging the then-predominant method of using individual bar codes to keep track of merchandise. Instead, the industry began experimenting with RFID solutions that used encoding networks developed either through Wi-Fi connected internet, or, in the case of larger companies, their own dedicated in-house network. With this burgeoning technology came early development hiccups, including weak Wi-Fi signals, inaccurate tracking, and insufficient battery life on the new RFID tag encoding devices.

9. In early 2008, McAllister set out to improve the existing technology in the RFID tag and encoding industry by creating a tangible device that could be used with real-time RFID

encoding (without having to rely on spotty Wi-Fi or in-house Ethernet networks) and that still produced a unique item number. McAllister reconfigured the structure of the memory in an RFID integrated circuit to take into account a small number of digital bits – ultimately known in the '805 Patent as the "most significant bits" – that would identify key pieces of information and streamline a customer's ability to produce unique product numbers in real time or to be pre-encoded before application to a commercial product. These "most significant bits" – as described in the '805 Patent – help define an important section of the memory of a 96- or 128-bit encoded RFID integrated circuit, which allows customers, for instance, to identify where the integrated circuit chip serial number came from (i.e. what entity or company encoded it).

10.    In the years after McAllister originally filed for patent protection for his inventions, the industry began implementing McAllister's idea in wide-spread fashion and without any attribution. Specifically, several industry manufacturers banded together to create what became known as the "multi-vendor chip-based serialization" agreement ("MCS"). This agreement is, in effect, a new guideline for the industry that focuses on a 38-bit portion of the code within an encoded RFID device and, within the memory structure of such a device, uses "most significant bits" to help create a unique product identifier. These "most significant bits" are often called the "MCS prefix" or "MCS allocation" bits by IMPINJ and other chip manufacturers in this industry. This adopted proposal mirrored the solution McAllister and ADASA had pioneered years earlier. Today, many companies in the RFID encoding industry, including IMPINJ, regularly use and market their ability to encode RFID tags using the "MCS" guideline to their customers.

## FIRST CLAIM FOR RELIEF
### (Patent Infringement)

11.  Plaintiff incorporates by reference Paragraphs 1 - 10 of this Complaint as if set forth below.

12.  Plaintiff is the owner of the '805 Patent with the exclusive right to enforce the '805 Patent against infringers, and collect damages for all relevant times, including the right to prosecute this action.

13.  IMPINJ directly infringes the '805 Patent because it makes, uses, sells, and offers for sale RFID integrated circuits pre-encoded with an MCS encoded structure, particularly including using the most-significant bits identified in the '805 Patent. By way of example only, IMPINJ, at a minimum, directly infringes at least claims 16 and 17 of the '805 Patent by making, selling, and offering to sell MONZA 6 integrated circuits that are pre-encoded with a unique serial number using the MCS encoded structure.

14.  More particularly, IMPINJ makes, sells, and offers to sell integrated circuit chips in which the memory is formatted into blocks that are at least partially encoded using the MCS encoding structure. IMPINJ internally formats the memory of the chip to include an Electronic Product Code ("EPC") memory bank with at least 96 total bits of information. The EPC memory bank includes a unique object number space having a block for an object class information space (i.e. the UPC or SKU portion of a code) and a separate block of at least 38 bits for a unique serial number space that can identify a specific item. Within the unique serial number space block allocated within the chip, IMPINJ encodes the three "most significant bits," as identified in the '805 Patent, with its own code of "101" to identify IMPINJ as the manufacturer of the chip and

then encodes the remaining bits with a serial number. This results in the chip being pre-encoded by IMPINJ with a unique serial number within the unique serial number space block.

15.     IMPINJ's use of this technology is not kept confidentially. To the contrary, IMPINJ advertises, promotes, and describes in a step-by-step fashion how it internally encodes or instructs others to encode its chips using MCS and as described by the '805 patent. Specifically, on its website, IMPINJ offers to the public several documents, which describe with great detail how IMPINJ encodes its own chips and instructs others to encode its chips using MCS and mirrors the very chip described in claim 16 of the '805 Patent. While IMPINJ describes its MCS encoded chips in several different marketing materials, the example sets of instructions and materials provided in Exhibits B, C, and D to this complaint offer a direct example of the company's use of the technology described in ADASA's '805 Patent.

16.     Additionally, IMPINJ indirectly infringes the '805 Patent because it makes, uses, sells, and offers for sale encoded RFID integrated circuits that use the MCS encoded structure. By way of example only, IMPINJ, at a minimum, induces infringement at least claims 16 and 17 of the '805 Patent by making, selling, and offering to sell MONZA 4, 5, and 6 integrated circuits with a formatted memory structure for which the encoding of the unique serial number is to be completed by brand owners, retailers, service bureaus, inlay providers, and/or other end users using the MCS encoding structure. For example, customers and users of the accused products (such as Perry Ellis, Fossil, Hanes, Tagsys, SML Group, SMARTRAC) directly infringe at least claim 16 and 17 of the '805 Patent when using or employing IMPINJ's described MCS encoding structure. IMPINJ customers and users ultimately directly infringe the '805 Patent by purchasing an integrated circuit from IMPINJ that is formatted with a portion of the MCS structure

embedded in it and then finish encoding the remaining bits according to IMPINJ's instructions using MCS.

17. On information and belief, IMPINJ possesses a specific intent to induce infringement by at a minimum, providing formulas, programming code, firmware, software, instructions, user guides, industry white-papers, and other sales-related materials that instruct its customers and users on the operation of the accused products and the steps to encode the MONZA 4, 5, and 6 integrated circuits that infringe the '805 Patent. Such materials include the examples previously mentioned and attached as Exhibits B, C and D.

18. By providing formulas, programming code, firmware, software, instructions, user guides, industry white-papers, and other sales-related materials regarding encoding its accused integrated circuit chips using the MCS structure, on information and belief, IMPINJ knows that its acts will induce its end customers to infringe at least claims 16 and 17 of the '805 Patent.

19. ADASA has been damaged as a result of IMPINJ's infringing conduct. IMPINJ is, thus, liable to ADASA in an amount that adequately compensates ADASA for IMPINJ's infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

20. IMPINJ has knowledge of the '805 Patent at least as early as the service of this complaint.

**PRAYER FOR RELIEF**

ADASA requests that the Court find in its favor and against IMPINJ, and that the Court grant ADASA the following relief:

a. Judgment that one or more claims of the '805 Patent have been infringed, either literally and/or under the doctrine of equivalents, by IMPINJ;

b.   Judgment that IMPINJ account for and pay to ADASA all damages to and costs incurred by ADASA because of IMPINJ's infringing activities and other conduct complained of herein;

c.   That IMPINJ, its officers, agents, servants and employees, and those persons in active concert and participation with any of them, be permanently enjoined from infringement of the '805 Patent. In the alternative, if the Court finds that an injunction is not warranted, ADASA requests an award of post judgment royalty to compensate for future infringement;

d.   That ADASA be granted pre-judgment and post-judgment interest on the damages caused to it by reason of IMPINJ's infringing activities and other conduct complained of herein;

e.   That this Court declare this an exceptional case and award ADASA its reasonable attorney's fees and costs in accordance with 35 U.S.C. § 285; and

f.   That ADASA be granted such other and further relief as the Court may deem just and proper under the circumstances.

## JURY DEMAND

Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED: May 31, 2016.          /s/ John Mansfield
                              Mansfield Law
                              121 SW Morrison, Suite 400
                              Portland, OR 97204
                              (971) 271-8615
                              john@mansfieldlaw.net

                              Jonathan T. Suder (pro hac vice to be filed)
                              Brett M. Pinkus (pro hac vice to be filed)

Glenn S. Orman (pro hac vice to be filed)
FRIEDMAN, SUDER & COOKE
604 E. Fourth Street, Suite 200
Fort Worth, TX  76102
(817) 334-0400
(817) 334-0401 fax
jts@fsclaw.com
pinkus@fsclaw.com
orman@fsclaw.com

ATTORNEYS FOR PLAINTIFF
ADASA INC.